IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**FLEXX, INC. d/b/a FLEXX MEDIA,**

    Plaintiff,

vs.                               Civil Action No.: CV 09-J-1858 IPJ

**CARDINAL HEALTH, INC.,**

    Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant Cardinal Health, Inc.'s motion for summary judgment (doc. 23), brief in support (doc. 24), evidentiary materials (doc. 25). Plaintiff Flexx, Inc. d/b/a Flexx Media has filed a response (doc. 26) and evidentiary materials (doc. 27), to which defendant has filed a reply (doc. 34).

### Factual Background

Plaintiff Mike Abell formed Flexx, Inc. ("Flexx") in 2006 with Todd Bass, both of whom were employees of MailSouth at the time. Abell Dep., at 13, 27 (doc. 25-1). Through a business contact Bass had formed as an employee of MailSouth, Flexx solicited business from Cardinal Health, Inc.[1] ("Cardinal")

---

[1] Cardinal provides over-the-counter and prescription pharmaceutical products to pharmacies across the country. It employees thousands of people. Doyle Decl., ¶¶ 3, 5 (doc. 25-3).

1

through its Manager of Advertising, Sandra Dodd.  Abell Dep., at 118; Doyle Dep., at 10 (doc. 27-2).  Flexx offered to provide pharmacies that contracted with Cardinal point of purchase ("POP") kits that would include various posters and advertising materials.  Abell Dep., at 117-118.  Because MailSouth was a competitor in the same industry as Flexx, Abell used a false name, "Alan Cameron," in its dealings with Cardinal because he did not want Cardinal or MailSouth to know about his connection, as Abell, to Flexx.  Abell Dep., at 134-137.

From June 2007 through September 2007, Flexx sold POP kits to Cardinal on a per-sale or invoice basis.  Abell Dep., at 164.  Flexx offered five types of POP kits, each of which had a different price.  These prices were determined by Abell and Bass who endeavored to earn a forty percent profit margin on each kit.[2]  Abell Dep., at 225.  These same prices were memorialized in a document that is the basis of this suit, the alleged contract ("the document" or "alleged contract") signed by

---

[2]A January 9, 2008, email from Abell to Tim Doyle, Director of Retail Marketing for Cardinal, stated that Flexx would price certain POP kits at cost or below cost.  Because Abell acknowledged during his deposition that he knew at the time he sent the email that the prices quoted to Doyle were not at or below cost, and that he "was trying to position [Flexx] to make [Doyle] understand we were very competitive on pricing," the court finds that viewing the facts in the light most favorable to Flexx, it did not price its POP kits at or below cost.  Abell Dep., at 170-172.

Dodd on September 4, 2007, and by Abell on September 12, 2007. Abell Dep., at 164; Ex. 2 to Cardinal's Evidentiary Material (doc. 25-2).

According to the document, "The minimum level of participation is 1,300 kits per month to maintain this current pricing structure," but it does not provide price terms in the event the level of participation is below 1,300 kits. The document does not set a minimum number of kits that Cardinal must purchase; rather, the number of kits purchased and sold is determined by Cardinal each month and is therefore subject to change. In the event Cardinal cancels the alleged contract, the document states that Cardinal must pay "100% of the price of the remaining months of the term of this agreement . . . based on a minimal level of participation of (1000) kits per month." The document does not state which of the five kits, or what combination of the five kits, would be used to make this calculation. A merger clause states, "This document shall constitute the entire agreement between Cardinal Health and Flexx Media," and there is no language that states Flexx shall be Cardinal's exclusive POP supplier. Ex. 2 to Cardinal's Evidentiary Material (doc. 25-2).

There are no previous drafts of the document that have different terms from the alleged contract. Abell Dep., at 105. The document was drafted at Dodd's request by Abell with Bass' input. Abell Dep., at 61, 149. No one at Cardinal had

a hand in drafting the document nor did anyone at Cardinal add any provisions to the contract. Abell Dep., at 150. Dodd was the only person at Cardinal with whom Abell had discussed the contract and was the only person at Cardinal who negotiated the contract.[3] Abell Dep., at 146; Flexx's Answers to Cardinal's Requests for Admission, ¶ 2 (doc. 25-5). Abell read the document to Dodd over the phone, after which she exclaimed that she was "thrilled" with the agreement because the projected $500,000 savings would make her "look like a hero" to her company. Abell Dep., at 195-196. Abell then mailed the document to Dodd who signed it and returned it via mail to Abell for his signature. Abell Dep., at 105-106.

Abell had no conversations with anyone at Cardinal about Dodd's authority to enter the contract. Abell Dep., at 149. According to Tim Doyle, Director of Retail Marketing in the Consumer Health Group, and Jeff Thomas, the Vice President of Retail Marketing and Product Development, Dodd did not have authority to sign contracts in general nor did she have the authority to enter into the alleged contract presented by Flexx. Doyle Decl., ¶ 8 (doc. 25-3); Thomas Decl., ¶ 6 (doc. 25-4). As Doyle testified during his deposition,

---

[3]Moreover, until Dodd was terminated from Cardinal for bringing a firearm on company premises, Abell worked only with Dodd and an employee named Angela Monfre. Abell Dep., at 146-148.

> I knew in that time frame, August/September time frame of 2007, that Sandra [Dodd] was dependent on me for even minor details like suppressing an imprint charge, a $75 imprint charge. It was beyond me that she would have signed an agreement of that scale at that time without consulting me.

Doyle Dep., at 125 (doc. 27-2). After Dodd was terminated, a review of the documents in her office showed there were no copies of the alleged contract nor were there any notes, letters, emails, or other communications that mentioned the alleged contract. Doyle Decl., ¶ 13.

In December 2007 Doyle scheduled a conference call with Flexx and several vendors to determine how to control the costs of the POP program. Doyle Dep., at 75-77, 84, 131-133. According to Doyle, Doyle asked Alan Cameron (the name Abell used when interacting with Cardinal[4]), whether Flexx and Cardinal had a contract, and Cameron said no. Doyle Dep., at 84, 132; Schindler Email to Doyle, Ex. 16 to Flexx's Response (doc. 27-2). Doyle then asked Cameron to put together a written agreement, but when Doyle asked about the status of the written

---

[4]The court notes that Abell signed the purported contract with Cardinal with his real name, Mike Abell. It is not clear why Abell revealed his identity to Dodd while concealing it to others within Cardinal, but it is noted that after Dodd's termination from Cardinal, Dodd, Bass, and Abell started a new venture together. When securing investors for the venture, a dispute between the three arose about the percentage of the projected proceeds Abell had claimed for himself and the amount of work he was doing. Around the same time, Abell discovered that Bass had disbursed $19,000 in Flexx's funds to himself. These events caused the three individuals to go their separate ways. Abell Dep., at 89-97.

agreement in January, Cameron stated the two companies had a contract dating to September 2007.  Doyle Dep., at 84, 132, 139.  Abell does not recall denying the existence of a contract during the conference call, and stated that a February 2008 inquiry by Doyle into the existence of a contract was the first time Doyle was made aware of the alleged contract's existence.  Abell Dep., at 230-231.  On May 12, 2008, Doyle made the decision to stop using Flexx as its POP kit provider primarily because of cost, and due to concern over Flexx's honesty about the existence of an agreement between the two companies.  Doyle Dep., at 108, 114, 125.

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury

verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

## Legal Analysis

To prove a breach of contract under Alabama law, a plaintiff must show a valid contract binds the parties, the plaintiff performed under the contract, the defendant failed to perform, and the defendant suffered damages as a result. *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009) (citing *Reynold Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)). The elements necessary to show the existence of a valid contract are an offer and an acceptance, consideration, and mutual assent to the contract's essential terms. *Id.* (citing *Ex parte Grant*, 711 So.3d 464, 465 (Ala. 1997)). In this case, Flexx argues that Sandra Dodd, as an agent of Cardinal, entered into a valid contract with Flexx, and Cardinal should be held to that contract because it shrouded Dodd in apparent authority to act on its behalf.

"'The apparent power of an agent is to be determined by the acts of

the principal, and not the acts of the agent; a principal is responsible for the acts of the agent only where the principal by his acts or conduct has clothed the agent with the appearance of authority and not where the agent's own conduct and statements have created apparent authority.'" *Patterson v. Page Aircraft Maint., Inc.,* 51 Ala.App. 122, 125-26, 283 So.2d 433, 436 (Ala. Civ. App. 1973) (emphasis omitted). To avoid a summary judgment, a party relying on apparent agency must ""'show that he was misled by the appearances relied upon. It is not enough that he might have been, . . . so misled. It must also appear that he had reasonable cause to believe that the authority existed; mere belief without cause, or belief in the face of facts that should have put him on his guard is not enough.'""

*McLemore v. Hyundai Motor Mfg. Alabama, LLC,* 7 So. 3d 318, 329 (Ala. 2008) (citing *Brown v. St. Vincent's Hosp.*, 899 So.2d 227, 241 (Ala. 2004)) (other citations omitted).

The evidence viewed in the light most favorable to Flexx shows that Doyle did not know any alleged contract existed until February 2008, Abell Dep., at 230-231, and until Dodd was terminated,[5] Flexx worked only with Dodd and another employee in the Germantown, Wisconsin office, Angela Monfre. Flexx stresses that Dodd herself made representations that she had the authority to contract on behalf of Cardinal; that Dodd had a position with her former company, which was

---

[5] Dodd was fired sometime before a November 2, 2007, email from "Alan Cameron" to Angela Massey where Cameron acknowledges that he knew Dodd had been fired, but after Dodd signed the alleged contract on September 4, 2007. Email from Cameron to Massey, doc. 27-2, ex. 26; Ex. 2 to Cardinal's Evidentiary Material (doc. 25-2).

acquired by Cardinal in 2006, requiring her to handle "all of the marketing efforts" for it; that Cardinal placed her in a position as "the go-to person in charge of the day-to-day operations of the POP kit program"; and that Dodd accepted Flexx's invoices, which were ultimately paid. Plaintiff's Response, at 16 (doc. 26). However, the court finds Flexx's arguments unavailing and the defendant's motion for summary judgment is due to be granted.

Dodd's own representations ignore the fact that "'the apparent power of an agent is to be determined by the acts of the principal, and not the acts of the agent," *McLemore*, 7 So. 3d at 329 (citations omitted); *see Bird v. Auto Owners Inc. Co.*, 572 So2d 394, 397 (Ala. 1990) (apparent authority applies when the third party has been "misled" by a principal who has "held out" an agent as such "or as possessing the authority assumed by such agent"); *Owens v. Wood*, 190 So.2d 734, 741 (Ala. Ct. App. 1966) ("In order to charge the principal because of apparent authority, *a third party must prove that the principal manifested indicia of having cloaked the agent with the authority*."), and no evidence demonstrates Dodd had the authority to contract in her former position, that Dodd's new position with Cardinal was intended to be of a similar scope, or that a principal from Cardinal informed Flexx that Dodd's position gave her the ability bind Cardinal. Finally, although Dodd managed the operations of the POP kit program and accepted

invoices from Flexx, these responsibilities do not give reasonable cause to believe that Dodd had the authority to enter into a two-year contract worth more than one million dollars on behalf of Cardinal.[6]

Flexx next argues that Cardinal ratified the alleged contract by continuing to abide by its terms after Doyle became aware that Flexx believed a contract to exist.

> It is an established principle of the law of agency that where a person acts for another who accepts or retains the benefits or proceeds of his

---

[6]The plaintiff spends approximately two and one-half pages to brief the issue of Dodd's alleged authority to contract on behalf of Cardinal. In only two places is actual authority mentioned: the title line, which states, "The contract upon which Flexx bases its claims is enforceable because it was signed by an individual – Sandra Dodd – who had apparent authority (if not actual authority) to bind Cardinal Health the contract," and the last line of that section, which states that Dodd had apparent authority "(if not actual authority)" based on her position at Cardinal. Plaintiff's Response, at 14-17 (doc. 26). Because "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment [and] the onus is upon the parties to formulate arguments," the court finds any argument premised on Dodd's alleged actual authority hereby abandoned. *See Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (citation omitted) *reh'g granted and vacated by* 126 F.3d 1295 (1998), *reinstated by*, 166 F.3d 1332, 1336 (11th Cir. 1999) (en banc). Even assuming the argument were not abandoned, "the authority of an agent to contract on behalf of a principal must be either expressed, implied, or apparent." *McLemore*, 7 So. 3d at 328 (citations omitted). The plaintiff presents no evidence that Dodd had express authority to contract. Moreover, implied authority differs from apparent authority "in that it is authority which the principal intended that the agent should have." *Id.* The only evidence presented to the court shows that Dodd's supervisors did not intend for her to have the power to contract. Doyle Decl., ¶ 8 (doc. 25-3); Thomas Decl., ¶ 6 (doc. 25-4).

> efforts with knowledge of the material facts surrounding the transaction, such other must be deemed to have [r]atified the methods employed, as he may not, even though innocent, receive or retain the benefits of, and at the same time disclaim responsibility for, the measures by which they were acquired. This general principle applies, for example, to an unauthorized contract effected. . . .

*Tuskegee Institute v. May Refrigeration Co., Inc.*, 344 So. 2d 156, 158 (Ala. 1977) (citing 3 AM. JUR. 2D *Agency* §175 (2010)). Cardinal cannot be said to have ratified the alleged contract by continuing to purchase the POP kits at the same price and from the same vendor from which it had been purchasing them for several months before the execution of the alleged contract. Under these circumstances, Cardinal is not reaping benefits of an unauthorized contract entered into by Dodd while avoiding its obligations; rather, it is continuing a course of business that it had established several months prior to the alleged contract's execution.

Because Flexx failed to prove that Sandra Dodd was the agent of Cardinal, it has failed to prove that Cardinal entered into a valid contract with Flexx. As such, the defendant's motion for summary judgment is due to be granted and the plaintiff's claim for breach of contract is due to be dismissed.

## **CONCLUSION**

Having considered the foregoing and finding that the plaintiff has failed to

establish a genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** the defendant's motion for summary judgment (doc. 23) be and hereby is **GRANTED**.  The court shall so rule by separate order.

**DONE** and **ORDERED** this 19th day of August 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE